***NOT FOR PUBLICATION***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANTIONE STEVENS, | : | |
| | : | Civil Action No. 15-0571 (CCC) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| PATRICK A. NOGAN, et al., | : | |
| | : | |
| Respondents. | : | |

**CECCHI, District Judge:**

Petitioner Antione Stevens filed the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging a conviction and sentence imposed by the State of New Jersey for armed robbery and other related crimes. Respondents have filed a Response, and Petitioner has filed a Reply. For the reasons stated below, the Court denies the Petition.

### I.   FACTUAL BACKGROUND

For the purposes of this Opinion, the Court recites only relevant facts, as summarized by the state appellate courts on direct appeal and/or in the post-conviction relief ("PCR") proceeding.

> Defendant's convictions arise from the armed robbery of Antonio De la Cruz on December 5, 2006. Both the victim and T.T., a juvenile who participated in the robbery, identified defendant and testified about his involvement in the robbery.
>
> T.T. testified that she was hanging out at her aunt's house in Jersey City with another juvenile, L.G., and Dafne Abad that evening. At the time, T.T. was seventeen, L.G. was fifteen and Dafne was eighteen. The three of them wanted to get a bottle of liquor to drink. As they were walking to the liquor store, a car pulled up, driven by someone they did not know. T.T. identified defendant in court as the driver. He introduced himself as "T." Defendant drove the girls to the liquor store. As the girls were putting together the money to purchase the liquor, defendant started asking them questions-whether they were cops and if they were "wired." The girls replied that they were not and even pulled down their sweaters to show

> that they were not "wired." The girls gave defendant their money and he purchased two bottles of liquor for them. T.T. testified that she intended only to get the liquor and go home but the three girls eventually drove to West New York with defendant.
>
> T.T testified that she had never seen a gun before that evening, when defendant pulled one out and showed it to the girls. He told them that he wanted to "go catch a trick," which T.T. understood to mean that he wanted to rob somebody. T.T. said that she was scared but did not know what to do.
>
> In West New York, they walked down the street, with T.T. and L.G. on one side and Dafne and defendant on the other side of the street. They encountered De la Cruz and started to follow him. T.T. stated that Dafne and L.G. went up to him and "stuck him up." She and defendant were standing there, and then, defendant unzipped De la Cruz's jacket and told L.G. to go through his pockets. T.T. saw the gun a second time as Dafne pointed it at the victim and spoke to him in Spanish. They took his cell phone, his money and his iPod and then told the victim to leave. As they were returning to the car, they saw a police car with its lights activated and started running. Eventually, the four of them were found lying down on a residential porch. The police confiscated the gun and took them into custody. T.T. identified the gun and cell phone in evidence as the gun defendant had that evening and as the victim's cell phone.
>
> De la Cruz testified that he was walking home from work at approximately 3:30 a.m. when he was confronted by two young women speaking to him in English. When he continued walking toward his house, they grabbed him by his arms. He struggled until he observed a man and realized that one of the women had a gun. At trial, De la Cruz identified defendant as the man who mugged him with the young women and identified the gun used in the robbery. De la Cruz stated that defendant unzipped his jacket and "checked [him] over." His wallet, camera, phone and iPod were taken.

(ECF No. 6-6 at 2-4.)

At trial, after the parties presented their cases, and either immediately prior to or during jury deliberation,

> Juror Number 4 reported that Juror Number 10, an African American woman, allegedly had remarked that the robbery victim got what he deserved because he did not speak English. When this allegation came to the attention of the court and counsel, the trial judge interviewed each of the jurors individually in camera and inquired about whether they had overheard another juror make a comment about the victim's inability to speak English. All of the jurors, except for Number 4, denied overhearing any such comment by another juror. Following those interviews, both the assistant prosecutor and defendant's trial counsel were satisfied with the court's inquiries of the jurors, and did not request any further action. The

2

>judge concluded that there was no evidence that the jurors had been tainted by the alleged comment and that there was no prejudice. In fact, the judge expressed doubts as to whether the alleged comment was made at all. The case proceeded to verdict and the deliberating jurors, who did not include Juror Number 4, found defendant guilty on all counts charged in the indictment.

(ECF No. 6-17 at 5-6.) Petitioner was not present during the judge's questioning. (ECF No. 6-30 at 11.)

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a claim has been adjudicated on the merits in state court proceedings, a writ for habeas corpus shall not issue unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012).

A state-court decision involves an "unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to, state court decisions. *See Felkner v. Jackson*,

131 S. Ct. 1305, 1307 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

### III. DISCUSSION

Petitioner raises four claims in the Petition: (1) the trial court erred in questioning the jurors, outside of Petitioner's presence, regarding the alleged prejudicial remark; (2) the trial court erred in giving a jury instruction that did not comport with *State v. Bielkiewicz*, 267 N.J. Super. 520 (App. Div. 1993); (3) trial counsel provided ineffective assistance when he failed to move for a mistrial due to the alleged prejudicial remark; and (4) appellate counsel was ineffective for not raising the aforementioned issues on appeal. The Court addresses each of these grounds below.

#### A. Ground One

Petitioner argues that the trial court erred when it questioned the jurors regarding the alleged jury misconduct outside of Petitioner's presence. The state court provided no substantive analysis of the claim, and summarily "conclude[d] that [it] lack[ed] sufficient merit to be discussed in this opinion." (*See* ECF No. 6-17 at 8.) Nevertheless, in the absence of substantive analysis, "AEDPA requires that [federal courts] 'determine what argument or theories supported or . . .

could have supported, the state court's decision." *Collins v. Sec. of Pa. Dep't of Corr.*, 742 F.3d 528, 548 (3d Cir. 2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

"The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (internal citation omitted). "[A] defendant has a due process right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge . . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" *Id.* (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934)).

In *Gagnon*, one of jurors during trial noticed a defendant making sketches of the jurors, and informed the bailiff of his concerns. The trial court decided to conduct an *in camera* questioning of the juror, and requested that defense counsel for the defendant to be present during questioning, but excluded all other defendants and counsels. Once the trial court assured itself that the juror was willing to continue as an impartial juror, it allowed the trial to continue. *Id.* at 523-24. The *Gagnon* court held that "respondents' rights under the [] Due Process Clause were not violated by the in camera discussion with the juror. '[T]he mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication.'" *Id.* at 526 (quoting *Rushen v. Spain*, 464 U.S. 114, 125-26 (1983) (Stevens, J., concurring in judgment)). The court further held:

> the presence of the four respondents and their four trial counsel at the in camera discussion was not required to ensure fundamental fairness or a reasonably substantial . . . opportunity to defend against the charge. The encounter between the judge, the juror, and Gagnon's lawyer was a short interlude in a complex trial; the conference was not the sort of event which every defendant had a right personally to attend under the [Due Process Clause]. Respondents could have done nothing had they been at the conference, nor would they have gained anything by attending. Indeed, the presence of Gagnon and the other respondents, their four counsel, and the prosecutor could have been counterproductive. Juror Graham had quietly expressed some concern about the purposes of Gagnon's sketching, and the District Judge sought to explain the situation to the juror. [The Due Process Clause] does not require that all the parties be present when the judge inquires into such a minor occurrence.

*Id.* at 527 (internal citations omitted).

There are abundant similarities between the instant matter and *Gagnon*. Like *Gagnon*, a concern over the impartiality of a juror was brought to the trial court's attention, and the trial court decided to conduct *in camera* questioning of the jurors without Petitioner's presence, but allowed defense counsel to observe the questioning. Once the trial court was satisfied that there was no evidence of prejudice, the deliberation was allowed to continue. Petitioner argues in his Reply that "[u]ndoubtedly, the presence of the defendant is critical inasmuch as it would have allowed the defense counsel to ascertain information relevant to the defense." (ECF No. 7 at 9.) This is to no avail since defense counsel *was* present and, moreover, trial had already concluded. Just as in *Gagnon*, Petitioner has not demonstrated what impact his presence would have at the questioning, nor has he shown he would have gained anything from attending the questioning. Indeed, as the state court stated in addressing Petitioner's claim regarding ineffective assistance of trial counsel, and counsel's not requesting a mistrial, "even if the unconfirmed remark by Juror Number 10 had actually been made, it is likely that any animus against the victim shown by that remark would have been prejudicial to the State, rather than to defendant." (ECF No. 6-17 at 6.) The fact that the jury returned a unanimous guilty verdict against Petitioner would further suggest that the

6

alleged remark had no effect on the jury—Petitioner was convicted despite an alleged prejudice against the victim, not because of it. Thus, Petitioner has provided no evidence to show how his presence would have been material or substantial to the defense of his charges. As such, the state court's decision was a reasonable application of established federal law, based on a reasonable determination of the facts, and relief on this ground is denied.

### B. Ground Two

Petitioner argues that the trial court erred in giving a jury instruction that did not comport with *State v. Bielkiewicz*, 267 N.J. Super. 520 (App. Div. 1993).[1] To the extent that Petitioner's claim is purely based on an issue decided in *Bielkiewicz*, it is not a cognizable claim on federal habeas. Even if the trial court did err under state law, it is not a ground for relief. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("Federal habeas corpus relief does not lie for errors of state law."); *see also Smith v. Spisak*, 558 U.S. 139, 148 (2010) (no federal habeas relief when the Supreme Court has not previously held that a jury instruction is unconstitutional for the same reason).

To the extent Petitioner's challenge alleges that the trial court failed to instruct the jury on lesser included offenses, however, the Court will address this ground. As both the Supreme Court and the Third Circuit have explained, the purpose of a lesser-included offense instruction is to provide the jury with a viable alternative other than conviction or acquittal of the more serious crime, so that "the jury will accord the defendant the full benefit of the reasonable-doubt standard." *Beck v. Alabama*, 447 U.S. 625, 634 (1980); *see Vujosevic v. Rafferty*, 844 F.2d 1023, 1027 (3d Cir. 1988). "This requirement is based on the risk that a defendant might otherwise be convicted

---

[1] *Bielkiewicz* held that, if warranted by the facts of the case, the trial court must instruct the jury that each codefendant may be found guilty of different degrees of the same crime, based on each co-defendant's actual intent during the commission of the crime. 267 N.J. Super. at 533-35.

7

of a crime more serious than that which the jury believes he committed simply because the jury wishes to avoid setting him free." *Vujosevic*, 844 F.2d at 1027. Indeed, under federal law, before a lesser-included offense instruction may be given, most circuits require findings that (1) the elements required to prove the lesser-included offense be a subset of the elements required for the charged crime, and (2) rational basis exists on the record that would permit the jury to acquit the defendant of the charged crime *and* convict the defendant of the lesser offense. *See United States v. John*, 849 F.3d 912, 920 (10th Cir. 2017); *United States v. Rainbow*, 813 F.3d 1097, 1105 (8th Cir. 2016); *United States v. Nur*, 799 F.3d 155, 159 (1st Cir. 2015); *United States v. Ambriz*, 727 F.3d 378, 381 (5th Cir. 2013); *United States v. LaPointe*, 690 F.3d 434, 439 (6th Cir. 2012); *United State v. Pillado*, 656 F.3d 754, 761 (7th Cir. 2011); *United States v. Crowe*, 563 F.3d 969, 972 (9th Cir. 2009); *United States v. Snype*, 441 F.3d 119, 141 (2d Cir. 2006).

The state appellate court, in addressing this claim, discussed whether the trial court erred in failing to instruct the jury on a lesser-included offense. (*See* ECF No. 6-6 at 8-10.) To begin, it found that the trial court *did* give a lesser-included offense instruction. (*Id.* at 8-9.) However, it found that the trial court erred in *giving* the instruction, because there was no evidence to suggest that Petitioner could have been acquitted of the charged offense.

> There was no inconsistency in the evidence regarding the nature of defendant's participation. He initiated the armed robbery by drawing a weapon and telling his teenage passengers that he wanted to commit a robbery. The mere fact that Dafne Abad held the gun during the actual robbery does not vitiate defendant's expressed intent to commit an armed robbery. Defendant has cited no other evidence to support a conclusion that he and Dafne Abad did not share the same intent or that his intent was to commit a robbery that did not include the use of a deadly weapon. Plainly, the evidence did not provide a rational basis for the jury to convict defendant of robbery while acquitting him of armed robbery.

8

(*Id.* at 9-10.) Since the trial court was not required to give a lesser-included offense instruction in the first instance, the appellate court reasoned, there can be no error in failing to include a *Bielkiewicz* instruction. (*Id.* at 10.)

The state court's decision was a reasonable application of established federal law based on a reasonable determination of the facts. As summarized above, the state court applied the exact "rational basis" test as established federal law, and concluded that a lesser included offense instruction was not necessary. Given the overwhelming evidence of Petitioner's intent, the Court cannot find that the state court's decision was unreasonable. As the state court opined, just because one of his codefendants, rather than Petitioner himself, actually brandished the weapon during the robbery, does not negate all other evidence of his intent, especially in the absence of evidence suggesting a contrary one. Accordingly, the Court finds that the state court's decision was a reasonable application of established federal law, based on a reasonable determination of the facts, and relief on this ground is denied.

### C. Ground Three

Petitioner argues that trial counsel provided ineffective assistance of counsel when he failed to move for a mistrial based on the alleged prejudicial remark by the juror. The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. To meet this prong, a

9

"convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness." *Hinton v. Alabama*, 134 S. Ct. 1081, 1083 (2014) (citation omitted). To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.[2] To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the [case] would have been different absent the deficient act or omission." *Hinton*, 134 S. Ct. at 1083.

> In denying relief on this ground, the state court held that:
>
> The judge wisely framed the inquiries to the jurors in a neutral and relatively generic fashion, in order to minimize the possibility that the questions themselves might trigger prejudicial repercussions. Moreover, even if the unconfirmed remark by Juror Number 10 had actually been made, it is likely that any animus against the victim shown by that remark would have been prejudicial to the State, rather than to defendant. The judge did not misapply his discretion in handling the matter as he did, and defendant's trial attorney was not deficient in accepting the court's manner of investigation and its decision to continue the case with the empaneled jurors. There was no necessity for defense counsel to seek a mistrial as the "extreme remedy" of "last resort." Even if such motion had been made, the court would have had a sound basis to deny it.

(ECF No. 6-17 at 6-7 (internal citation omitted).)

The Court finds the state court's decision was a reasonable application of established federal law, based on a reasonable determination of the facts. As the Court noted above, the alleged jury remark actually *favored* Petitioner. Counsel could hardly be faulted for not moving for a mistrial based on a remark that strengthened his case. Regardless, counsel likely recognized that

---

[2] The reasonable probability standard is less demanding than the preponderance of the evidence standard. *See Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).

moving for a mistrial on that basis would have been viewed as absurd and certain to fail, if such an argument entered his mind at all. Therefore, the state court was reasonable in finding that counsel was not ineffective, and relief on this ground is denied.

### D. Ground Four

Lastly, Petitioner argues that appellate counsel provided ineffective assistance when he failed to raise any of the above issues on appeal. As the Court already found the state court was reasonable to conclude that all of the above grounds were meritless, appellate counsel cannot be ineffective for failing to raise meritless claims. *See Moore v. Mitchell*, 708 F. 3d 760, 776 (6th Cir. 2013); *Barney v. D'Ilio*, No. 15-0057, 2018 WL 2018054, at * 23 (D.N.J. May 1, 2018). As such, relief on this ground is denied.

### E. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

### IV. CONCLUSION

For the reasons set forth above, the Petition is DENIED, and the Court DENIES a certificate of appealability.

Dated: June 1, 2018

_____
**Claire C. Cecchi, U.S.D.J.**